IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LINDA M., § | |
| PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:21-CV-210-BK |
| § | |
| COMMISSIONER, SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| DEFENDANT. § | |

## MEMORANDUM OPINION

Plaintiff seeks judicial review of the Commissioner's final decision denying her applications for a period of disability and disability insurance benefits as well as supplemental security income under the Social Security Act (the "Act"). She seeks benefits retroactive to her alleged onset date of September 18, 2018. Doc. 18-1 at 27. In accordance with 28 U.S.C. § 636 and the parties' consent to proceed before the undersigned United States magistrate judge, the Court now considers the parties' cross-motions for summary judgment. Doc. 22; Doc. 23; Doc. 24. For the following reasons, Plaintiff's motion is **DENIED**, Defendant's motion is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

### I. BACKGROUND

**A. Factual History**

Plaintiff was 45 years old on her disability onset date and has a general equivalency degree. Doc. 18-1 at 34, 219, 480. Plaintiff has past relevant employment as a fast-food worker and as a service clerk. Doc. 18-1 at 255-56. In terms of her relevant medical history, Plaintiff visited Dr. Jenny K. Riecke, M.D. in September 2018,

complaining of chronic migraine headaches with aura and associated nausea, vomiting, phonophobia, and photophobia, for which she had previously received Botox injections. Doc. 18-1 at 640. Plaintiff reported her migraines occurred twice a month and lasted one or two days each. Doc. 18-1 at 640.

In November 2018, Plaintiff received Botox injections from Dr. Deborah Friedman, M.D., Doc. 18-1 at 638-39, noting she had 33 headache days in the prior three months. Doc. 18 at 634. Dr. Friedman administered Botox injections again in February 2019 at which time Plaintiff reported having 21 headache days in the prior three months. Doc. 18 at 634. In September 2019, Plaintiff received Botox injections from Dr. Shamin Masrour, M.D., after reporting 16 headache days in the past three months. Doc. 18-1 at 975-76. Three months later, Plaintiff received Botox injections from Dr. Jessica Kiarashi, M.D., reporting five headache days in the past three months, although the Botox "continue[d] to help." Doc. 18-1 at 1168-69.

During the relevant period, Plaintiff also received mental health treatment for bipolar disorder from Janice Sloan, APRN, PMHNP-BC ("Sloan") through Family & Child Guidance Center. Doc. 18-1 at 856-80, 982-99, 1028-30. In an October 2018 medical disability statement, Sloan reported she had been treating Plaintiff since March 2017 for Bipolar I disorder, and that Plaintiff had marked limitation in her abilities to (1) interact with others; (2) maintain concentration, persistence, and pace; and (3) adapt and manage herself. Doc. 18-1 at 1170-75. Sloan predicted Plaintiff would be absent from work about three times per month. Doc. 18-1 at 1174.

2

### B. The Administrative Law Judge's ("ALJ") Findings

The ALJ found Plaintiff had the severe impairments of degenerative joint disease of the left knee, migraines, asthma, chronic obstructive pulmonary disease, migraine headaches, and bipolar disorder, but that these impairments did not meet or equal a Listing. Doc. 18-1 at 30. The ALJ determined Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with certain limitations. Doc. 18-1 at 31. In so finding, the ALJ noted the evidence of record did not indicate Plaintiff's "periods of increased migraine head pain" constituted "chronic symptomatology" as opposed to intermittent stress. Doc. 18-1 at 32. The ALJ noted that Plaintiff's migraines were improved with Botox injections and concluded she could perform work at her designated RFC. Doc. 18-1 at 33. As to Sloan's October 2018 opinion, the ALJ found "few objective findings to support the degree of limitation [Sloan] proposed," so Sloan's opinion had only "limited probative value." Doc. 18-1 at 33.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 432(d)(1)(A). The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past

3

work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or not disabled. *Id.* Otherwise, the burden shifts to the Commissioner at step five to show there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Judicial review of a denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Id.*; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their citations to the supporting evidence of record. The Court is not under an obligation to probe the record to find supporting evidence for one side or the other. *See*

FED. R. CIV. P. 56 (providing parties moving for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (clarifying the courts are under no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted)).

### III. ANALYSIS

#### A. The ALJ's assessment of the effect of Plaintiff's migraines is supported by substantial evidence.

Plaintiff first argues the ALJ failed to acknowledge that, even with Botox injections, Plaintiff testified "she was still experiencing one to two migraine headaches 'more or less' on a weekly basis that would last for a day to a day and one-half." Doc. 23 at 17 (citing Doc. 18-1 at 240). She argues the ALJ erred in failing to "evaluate [Plaintiff's] functioning during those periods of exacerbation." Doc. 23 at 21.

The ALJ made the threshold determination that Plaintiff's migraines were a severe impairment. Doc. 18-1 at 30. But finding a severe impairment "does not mandate additional limitations in the RFC." *Winston v. Berryhill*, No. 3:16-CV-419-BH, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017) (Ramirez, J.), *aff'd* 755 Fed. App'x 395 (5th Cir. Dec. 4, 2018). Rather, a claimant's RFC measures what she can still do despite her limitations—it reflects her "maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996) (emphasis omitted). The RFC determination is solely the ALJ's responsibility. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). The ALJ is not required to incorporate limitations in the RFC that he did not find supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ makes

5

his RFC assessment based on "all of the relevant evidence in the case record" including (1) medical history; (2) medical signs, and laboratory findings; (3) the effects of treatment; (4) reports of daily activities; and (5) medical source statements. SSR 96-8p, 1996 WL 374184, at *2.

      The ALJ found Plaintiff's migraines were effectively treated with Botox injections and caused only minor limitations on her functional capacity, even during periods of exacerbation. Doc. 18-1 at 32. The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her migraines were not consistent with the medical and other evidence of record. Doc. 18-1 at 32. The ALJ's conclusion is supported by substantial evidence, including (1) Plaintiff's testimony that the Botox injections "really, really do help," Doc. 18-1 at 237; and (2) the fact she was first diagnosed with migraines in 2006, but continued to work for over a decade thereafter, Doc. 18-1 at 1068; *see Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (finding ALJ's conclusion plaintiff could perform wide range of sedentary work was supported by substantial evidence because, *inter alia*, plaintiff worked "for several years while suffering from ailments she now asserts are disabling"). The ALJ limited Plaintiff to a reduced range of sedentary work to account for the limitations he found the medical evidence supported. Doc. 18-1 at 31. The ALJ needed only to include those limitations that he accepted as credible and that were supported by evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). The ALJ thus did not err by failing to incorporate additional limitations into his RFC determination. *See Acosta v. Astrue*, 865 F. Supp. 2d 767, 793 (W.D. Tex. Mar. 2, 2012) (citing *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002)).

### B. **The ALJ complied with the regulatory requirements in evaluating Sloan's medical opinion.**

Plaintiff next argues the ALJ erred by failing to "explain how [] Sloan's medical opinion lacks support from her medical reports, or those from Child and Family Guidance center." Doc. 23 at 25. She asserts "Sloan's treatment records . . . show persistent mood and affect disturbance[] and contradict the ALJ's conclusion that [Plaintiff's] mood and affect were typically normal." Doc. 23 at 27 (citing Doc. 18-1 at 33). Defendant counters that "the ALJ specifically considered [] Sloan's treatment records" in accordance with the regulations and, despite any symptoms Plaintiff may have had, the evidence indicates she "was able to engage in activities that require regular interaction with the public." Doc. 25 at 8.

Because Plaintiff filed for benefits "on or after March 27, 2017," the ALJ was required to apply the revised social security regulations. Doc. 18-1 at 27; 20 C.F.R. §§ 404.1520c, 416.920c. In the new regulations, the Commissioner revised the procedures and standards for evaluating medical opinions and administrative medical findings. To that end, ALJs are no longer required to give controlling weight to treating physicians' opinions. *Webster v. Kijakazi*, 19 F.4th 715, 718-19 (5th Cir. 2021). Instead, the ALJ must consider the persuasiveness of medical opinions from different sources. 20 C.F.R. §§ 404.1520c(a-b), 416.920c(a-b). Five factors bear on persuasiveness: (1) supportability; (2) consistency; (3) the relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict the opinion." *Id.* §§ 404.1520c(c)(5); 416.920c(c)(5). Nevertheless, the most important factors are whether the source's medical opinion is based on "objective medical evidence and supporting

explanations" and the "consistency" of the source's opinion with the evidence from other medical and nonmedical sources. *Webster*, 19 F.4th at 719 (citation omitted).

Although there is no specific manner in which ALJs must articulate their determinations, they must at least "explain how [they] considered the supportability and consistency factors." *Guy v. Comm'r of Soc. Sec.*, No. 4:20-CV-1122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022) (Ray, J.) (quoting 20 C.F.R. § 404.1520c(b)(2)), *adopted by* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022) (O'Connor, J.). The supportability and consistency factors of the applicable regulation "involve different analyses and require the ALJ to explain his reasoning for his persuasiveness finding with respect to each factor." *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022). While "supportability" measures the degree of relatedness between a medical provider's opinion and the medical evidence *she provides to support* that opinion, "consistency" is "an all-encompassing inquiry," which focuses on "how well a medical source is supported, or not supported, *by the entire record*." *See id.* (citation omitted) (emphasis in original).

Here, the ALJ addressed Sloan's opinions as follows:

> While it is noted in October 2018 Janice Sloan, a psychiatric mental health nurse practitioner, opined that the claimant's mental health would impose moderate to marked limitations in function and cause her to be absent from work about three times a month, this statement, which provides quotes given by the claimant, such as "At home it takes me all day to complete a task," provides few objective findings to support the degree of limitation proposed. As this opinion is inconsistent with the objective evidence, which has typically included a normal mood and affect [], the undersigned finds it to have limited probative value.

Doc. 18-1 at 33.

In finding that Sloan's assessment "provides few objective findings to support the degree of limitation proposed," the ALJ indicated he was considering its supportability. *See Walsh v. Comm'r of Soc. Sec.*, No. 4:21-CV-00552-O-BP, 2022 WL 2874710, at *5 (N.D. Tex. July 7, 2022) (Ray, J.) (finding ALJ adequately addressed supportability in similar circumstances), *adopted by* 2022 WL 2872498 (N.D. Tex. July 21, 2022) (O'Connor, J.); *see also Webster*, 19 F.4th at 719.

Finally, the ALJ found Sloan's opinion to be "inconsistent with the objective evidence," which bears directly on its consistency. *See Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (Ray, J.) ("The ALJ sufficiently explained 'consistency' when he stated Dr. Wilkerson's opinion is 'extreme when compared to the balance of the medical evidence of record.'"). Plaintiff fails to show why the ALJ's findings are insufficient to allow for judicial review. Accordingly, because the ALJ complied with the applicable regulations, reversal is not warranted.

### IV. CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 23, is **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 24, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on September 8, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE